**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| NCM OF COLLIER COUNTY INC., )<br>A Florida Corporation, )<br> )<br>Plaintiff, )<br> )<br>v. )<br> )<br>DESIGN BURD INC., a dissolved Illinois )<br>Corporation, and MICHAEL BURDEN, an )<br>individual, )<br> )<br>Defendants. )<br> ) | Civil Action No.:<br><br><br>JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff NCM of Collier County, Inc. ("Naples Concrete") hereby complains of defendants Design Burd, Inc. and Michael Burden and states as follows:

## THE PARTIES

1.      Naples Concrete is a corporation organized under the laws of Florida with a registered business office located in Naples, Florida.  Naples Concrete is a prominent structural contractor that specializes in reinforced steel, concrete, and masonry.

2.      Defendant Michael Burden ("Burden") is an individual that resides in or about Chicago, Illinois. At all material times, Burden was and is the owner and controlling officer of Design Burd, Inc.

3.      Defendant Design Burd Inc. ("Design Burd") is a dissolved corporation organized pursuant to the laws of Illinois. According to its website, Design Burd maintains its offices at 903 W. Cornelia Ave, #2N, Chicago, Illinois. Design Burd purports to operate a web hosting and design company.

## STATUTORY BASIS AND NATURE OF ACTION

4.      This is an action for cybersquatting under 15 U.S.C. § 1125(d).

5.      This is further an action for common law fraud.

6.      This is further an action for breach of contract.

## JURISDICTION AND VENUE

7.      This Court has personal jurisdiction over Burden in that he is an Illinois resident and resides in this district.

8.      This Court has personal jurisdiction over Design Burd in that it is a dissolved Illinois corporation with its principal place of business in this district.

9.      This court has subject matter jurisdiction over the cybersquatting cause of action under 28 U.S.C. § 1331.

10.     This court has subject matter jurisdiction over the cause of action of common law fraud and breach of contract under 28 U.S.C. § 1367.

11.     Venue is proper in this district under 28 U.S.C. § 1391 in that each of the defendants resides in Illinois, and because a substantial part of the events or omissions giving rise to the claims occurred, or a substantial part of property that is the subject of the action is situated in this district.

## BACKGROUND

12.     Since September 28, 1993, NCM of Collier County has done business as "Naples Concrete."

13.     Since the early 2000s, Naples Concrete operated its online presence with its URL domain name naplesconcrete.com.[1] Through its exclusive use of the name Naples Concrete, consumers identify the name Naples Concrete with the Plaintiff in this action.

14.     In the early 2000s, Naples Concrete paid Campbel Media to create a website to be available to consumers at naplesconcrete.com. Campbel Media, on behalf of Naples Concrete, created a website and registered it through Network Solutions. All renewal notifications related to naplesconcrete.com were sent to Campbel Media, not Naples Concrete.

15.     On December 3, 2012, Naples Concrete received an email from Network Solutions stating that Naples Concrete domain name was unprotected.

16.     Naples Concrete logged on to Network Solutions and learned for the first time that Campbel Media had transferred the domain from Network Solutions to GoDaddy in 2004.

17.     In the interim, unbeknownst to Naples Concrete, Campbel Media went out of business.

18.     In December 2012, Burden called Naples Concrete and advised it that he had acquired the domain naplesconcrete.com, and demanded $800.00.

19.     Naples Concrete offered to purchase the domain from Burden for $600.00, which Burden pretended to accept. *See* correspondence attached as **Exhibit A**.

20.     Despite agreeing to transfer ownership of the domain to Naples Concrete following payment, Burden refused to transfer the domain to Naples Concrete.

21.     On February 21, 2013, after receiving Naples Concrete's correspondence and payment, Burden emailed Naples Concrete and falsely claimed that it would need to create a new

---

[1] In *Office Depot Inc. v Zuccarini,* 596 F.3d 696, 698-99 (9th Cir. 2010), the Ninth Circuit set forth a helpful primer on the internet's domain name system.

GoDaddy account in order for Burden to transfer the domain to Naples Concrete. *See* Feb. 21, 2013 email correspondence attached as **Exhibit B**.

22.     Also contained in Burden's February 21, 2013 correspondence, was an $800.00 invoice related to "hosting services" for the period of January 2013 through March 2013.

23.     On July 6, 2016, three years after promising to transfer the domain naplesconcrete.com to Naples Concrete, Burden emailed Naples Concrete explaining that the only reason he controlled the domain was because his old employer allegedly "held the domain hostage," but Burden was able to recover it from them.   That July 6, 2016 correspondence is attached as **Exhibit C**.

24.     In his July 6, 2016 correspondence, Burden once again falsely told Naples Concrete that he would transfer the domain once Naples Concrete set up a GoDaddy account. Ex. C.

25.     On July 8, 2016, Naples Concrete created a GoDaddy account per Burden's instructions and informed Burden of the same.  See **Exhibit D**.

26.     Burden requested that Naples Concrete give him the new GoDaddy account login information, and once received, he would transfer the domain. Ex. D.

27.     Despite again offering to transfer the domain to Naples Concrete once receiving the GoDaddy login (and payments for "hosting" services), Burden failed and refused to make the transfer. *See*  July 20, 2016 email from Naples Concrete to Burden attached as **Exhibit E**.

28.     On November 15, 2018, Naples Concrete emailed Burden requesting to discuss Burden's failure to transfer the domain as previously agreed. That November 15, 2018 email correspondence is attached as **Exhibit F**.

29.     On January 3, 2019, Burden responded to Naples Concrete stating, for the first time, that the transfer would not be made due to outstanding "hosting" fees. That January 3, 2019 correspondence is attached as **Exhibit G**.

30.     Burden then shut down Naples Concrete's website – and more seriously, its email – and threatened that he would not turn it back on unless Naples Concrete paid $1,100.00.   In other words, Burden was holding Naples Concrete's domain, website, and emails hostage to extract a ransom payment.  Ex. G.

31.     Naples Concrete requires access to its email server in order to take orders, fulfill requests, and for basic company operations.

32.     On January 8, 2019, after Naples Concrete promised to pay Burden the $1,100 ransom, Burden turned its email service back on.  The emails sent to Naples Concrete during the shutdown period, however, were permanently deleted. That January 8, 2019 correspondence is attached as **Exhibit H**.

33.     The loss of these emails caused Naples Concrete substantial damage in that it lost the opportunity to fulfill order requests and conduct general operations.

34.     Naples Concrete incurred further damage in that it was required to purchase a new website to protect itself should Burden decide to shut everything down again.

35.     To this day, Burden remains the registrant of the domain, and has repeatedly failed to transfer the domain to Naples Concrete as he repeatedly promised.

36.     Without this Court's intervention, Naples Concrete is unable to obtain a transfer of the domain.

## COUNT I
## VIOLATION OF THE LANHAM ACT
## CYBERSQUATTING

37.     Plaintiff incorporates herein and re-alleges the foregoing paragraphs as if fully set forth herein.

38.     Naples Concrete's NAPLES CONCRETE mark is a distinctive trademark entitled to protection under the Lanham Act.

39.     Through its continuous use of the NAPLES CONCRETE mark, Naples Concrete has developed substantial customer recognition in the industry, and an association between the NAPLES CONCRETE mark and its services.

40.     Naples Concrete has been using its mark in commerce in the United States since July 15 2003, and through its exclusive use, consumers identify the NAPLES CONCRETE mark with Plaintiff.

41.     Defendants registered, trafficked in, and used the domain naplesconcrete.com by acquiring it and repeatedly using it to ransom payments from Naples Concrete.

42.     Defendants have a bad faith intent to profit from its use of the domain, as evidenced by, among other things, the fact that they have no bona fide use for the domain and use it only to ransom payments from Naples Concrete.

43.     Defendants' acts, as aforesaid, are in violation of the Anticybersquatting Consumer Protection Act under Section 43(d) of the Lanham Act, 15 U.S.C. § 1125(d).

WHEREFORE, Plaintiff prays for an order and judgment:

A.      restraining and enjoining Defendants, their directors, officers, agents, servants, attorneys, employees, parent, subsidiaries, affiliates, related companies, successors and assigns, and all other persons or entities in active concert and/or participation with them who receive notice, from any further unfair competition;

6

B.      ordering Defendants to immediately transfer all ownership, control, and access to the Internet domain name NaplesConcrete.com to Plaintiff pursuant to 15 U.S.C. § 1125(d)(1);

C.      ordering Defendants to account for and pay to Plaintiff its actual damages by reason of Defendants' and cybersquatting, and such other damages as appear proper to the Court;

E.      granting Plaintiff a judgment for punitive damages in an amount to be determined;

G.      ordering Defendant to file in Court and to serve upon plaintiff's counsel, within thirty (30) days after entry of the above injunction, a report in writing, under oath, setting forth in detail the manner and form in which Defendant has complied with this injunction;

H.      finding this to be an "exceptional case" within the meaning of 15 U.S.C. § 1117 and awarding reasonable attorneys' fees to Plaintiff;

K.      awarding costs to Plaintiff; and

L.      granting Plaintiff such other and further relief as may be proper under the circumstances.

**COUNT II**
**FRAUD**

44.     Plaintiff incorporates herein and re-alleges the foregoing paragraphs as if fully set forth herein.

45.     Defendants repeatedly made the fraudulent misrepresentation that they would transfer the domain naplesconcrete.com to Plaintiff in exchange for Plaintiff's payment of "hosting fees."

46.     These representations were knowingly false when made, as Defendants had no intention of transferring ownership to Plaintiff.

47.     Instead, Defendants held the domain hostage, and used Plaintiff's website and email server as leverage in order to extract ransom payments.

WHEREFORE, Plaintiff prays for an order and judgment:

A.     Granting Plaintiff the damages it incurred due to Defendants' fraud in an amount to be proven at trial.;

B.     granting Plaintiff a judgment for punitive damages in an amount to be determined;

C.     awarding costs to plaintiff; and

D.     granting plaintiff such other and further relief as may be proper under the circumstances.

## COUNT III
## BREACH OF CONTRACT

48.     Plaintiff incorporates herein and re-alleges the foregoing paragraphs as if fully set forth herein.

49.     Plaintiff and the Defendants entered into a valid and enforceable contract for the transfer of the domain naplesconcrete.com to Naples Concrete.

50.     Plaintiff fulfilled all of its obligations under the contract.

51.     Despite Plaintiff fulfilling all of its obligations pursuant to the parties' agreement, Defendants have failed and refused to transfer NaplesConcrete.com to Plaintiff.

52.     Due to Defendants' breach, Plaintiff has been damaged in an amount to be proven at trial.

WHEREFORE, Plaintiff prays for an order and judgment:

A.     granting Plaintiff the damages it incurred due to Defendants' fraud in an amount to be proven at trial.;

B.     granting Plaintiff a judgment for punitive damages in an amount to be determined;

C.     awarding costs to plaintiff; and

8

D.      granting plaintiff such other and further relief as may be proper under the circumstances.

*       *       *       *

Dated:  January 17, 2019

/s/ John C. Gekas
John C. Gekas – ARDC No. 6281446
Michael J. Pollock – ARDC No. 6321866
SAUL EWING ARNSTEIN & LEHR LLP
161 N. Clark, Suite 4200
Chicago, IL  60601
Telephone:    (312) 876-7100
Facsimile:    (312) 876-7313
John.Gekas@saul.com
Michael.Pollock@saul.com
*Attorneys for Plaintiff NCM of Collier County, Inc..*

32347300.1